UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-CR-74 |
| | ) | |
| JAYSON CASTANEDA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion for Bond or Furlough [Doc. 98], requesting that Defendant be released pending the final revocation hearing in this matter. *See* [Docs. 87, 93]. This Motion was referred to the undersigned for a hearing, proposed findings of fact, and a report and recommendation by Senior District Judge J. Ronnie Greer pursuant to 28 U.S.C. § 636(b) and Federal Rule of Criminal Procedure 59(b). [Doc. 99]. The Court held a hearing on Defendant's Motion for Bond or Furlough on May 18, 2022. For the reasons discussed herein, the Court **RECOMMENDS** that the Defendant's Motion [Doc. 98] be **DENIED** and that Defendant be detained pending the final revocation hearing in this matter.

**I.     BACKGROUND**

Defendant's period of supervised release began on January 10, 2020. [Doc. 71, p. 1]. A Petition for Warrant [Doc. 71] was then issued on August 18, 2020, alleging that Defendant had violated the terms of his supervised release by having a positive drug screen for Suboxone, failing to report for subsequent required drug screens as instructed, and failing to submit his monthly supervision reports for the months of June and July 2020. *Id.* at p. 2-3. At the time the

Petition was issued, Defendant's whereabouts were unknown, and he was considered an absconder. *Id.* at p. 3. A final revocation hearing to address these alleged violations was held on December 7, 2020. Defendant was found to have violated the terms of his supervised release and was sentenced to 10 months of imprisonment with credit for time served, followed by 2 years of supervised release. [Doc. 84]. The terms of Defendant's supervised release were modified on August 23, 2021, to require him to participate in a cognitive behavioral treatment program as directed by the probation officer. [Doc. 86].

A second Petition for Warrant [Doc. 87] was issued on January 7, 2022, alleging that Defendant had violated the terms of his supervised release once again by failing to report to probation as instructed on December 13, 2021, and by failing to attend his required mental health treatment at Helen Ross McNabb Center, which included violence mitigation treatment. Additionally, Defendant's girlfriend, Megan Walker ("Ms. Walker"), had reported multiple instances of verbal abuse and aggression by Defendant to Defendant's probation officer and had obtained an Order of Protection against Defendant. *Id.* at p. 4-5. At the time the petition was issued, Defendant's whereabouts were again unknown, and he was considered an absconder. *Id.* at p. 5. Further, an Amended Petition [Doc. 93] was issued on April 5, 2022, alleging that Defendant was arrested by the Lenoir City Police Department on March 11, 2022, for Simple Domestic Assault against Ms. Walker and Misdemeanor Resisting Arrest. Defendant ultimately pled guilty to these offenses on March 16, 2022, and was sentenced to 11 months, 29 days suspended to probation with the conditions that he have no contact with Ms. Walker and complete anger management classes. [Doc. 93, p. 5]. The Amended Petition also stated that Defendant was arrested on January 11, 2022, by the Knox County Sheriff's Department and charged with Burglary based upon allegations that he shoplifted $49.30 worth of merchandise

from a Walmart store after he had previously been banned from all Walmart properties due to prior thefts. *Id.* at p. 6.

On May 16, 2022, Defendant filed a Motion for Bond or Furlough [Doc. 98] asking that he be released on bond to attend inpatient substance abuse treatment at True Purpose Ministries in Maryville, Tennessee. Defendant further noted that Ms. Walker was pregnant with his child and scheduled to deliver on May 25, 2022. As a part of his request for furlough or release, he requested permission to attend the delivery.

**II. FINDINGS OF FACT**

Defendant offered both witness testimony and proffer during the hearing. First, Defendant called Carlos Garcia ("Mr. Garcia"). Mr. Garcia is the intake coordinator and facility director at True Purpose Ministries' Maryville, Tennessee campus. He stated that he was previously in the military and had himself battled addiction, having now been sober for about four years. Mr. Garcia shared how this background allowed him to be effective in his role at True Purpose. He verified that he had a consultation with Defendant during which Defendant expressed that he has recently accepted the fact that he has substance abuse issues and is ready to obtain the help necessary to deal with those issues. Mr. Garcia stated that True Purpose would take steps to ensure that Defendant did not have contact with Ms. Walker if such contact is prohibited by a no contact order or the terms of his release and that if True Purpose discovered Defendant did have prohibited contact with Ms. Walker it would be reported to Probation immediately. On cross examination, Mr. Garcia did express some concerns about Defendant's past behaviors and the fact that his addiction is to alcohol. Mr. Garcia explained that alcohol addiction can be more problematic because alcohol is widely available and socially acceptable. He did note that the Ministry does not allow anyone in the program to go to the grocery store alone for that reason.

Despite his concerns, Mr. Garcia still thought Defendant would benefit from the services offered by True Purpose.

Ms. Walker also testified on Defendant's behalf. As referenced above, Ms. Walker is currently pregnant with Defendant's child and is scheduled to have labor inducted on May 25, 2022. Additionally, Ms. Walker has a 19-month-old son who considers Defendant to be his father. She stated that all the events she reported to police and Defendant's probation officer are true and she does not wish to change anything that she reported; however, Ms. Walker stated that she believes all of Defendant's violent and aggressive behavior is due to alcohol use and that he is "perfect" until he uses alcohol. Ms. Walker admitted that she was approximately 6 months pregnant in March 2022 when Defendant pushed her against a wall and took her cell phone to prevent her from calling for help. (She describes it more as him holding her against the wall rather than it being a violent incident). Ms. Walker's 19-month-old son was also present during these events, which are the ones that lead to Defendant's domestic assault conviction and the issuance of a no contact order. Ms. Walker stated Defendant consumed alcohol leading up to the domestic assault and admitted that she purchased that alcohol for him to drink despite being aware that he became aggressive when he drank. Ms. Walker stated that this was the only time Defendant had ever been physical with her, and that all prior instances had been verbal only. Ms. Walker also stated that once she realized that alcohol had a negative effect on Defendant, she told him not to drink it, but he would "sneak" alcohol anyway.

Ms. Walker acknowledged that she had sought an Order of Protection against Defendant in December 2021 but could not remember what she had stated in the Petition. The Order of Protection was initially issued but later dismissed without prejudice because Ms. Walker did not appear in Court, as reflected in the Order of Dismissal provided by Defendant's counsel following

the hearing. Ms. Walker testified that she had initially thought when the Order of Protection was dismissed the no contact order was dissolved as well but has since learned from Defendant's counsel that the no contact order is still in place. She further stated that Defendant's attorney had told her that she should not have further contact with Defendant while it remains in place. Ms. Walker advised that she has been working to have the no contact order dissolved but as of this time, has been unsuccessful in her efforts. She is still in regular contact with Defendant's mother and stepfather and stated she thinks Defendant is ready to change and wants him to be present at the birth of their child. On cross examination, when Ms. Walker was asked about Defendant's criminal history, including his convictions for stalking, violating an order of protection, aggravated assault, carrying a concealed weapon, and domestic assault, including a prior domestic assault against a pregnant woman, she acknowledged that she was aware of each prior conviction.

Defendant's counsel proffered that Defendant has expressed his need for both mental health and substance abuse treatment and explained how the previous denial of his substance abuse issues caused Defendant to spiral, resulting in domestic incidents with Ms. Walker, new criminal charges, and his pending supervised release violation. Defense counsel stated that although Defendant was previously receiving mental health treatment, he was missing a component of treatment to address his substance abuse issues and release to True Purpose will allow Defendant to receive both substance abuse and mental health treatment. Counsel acknowledged that Defendant and Ms. Walker living together was not a good situation previously but stated that Defendant wants to work on his issues in the hopes that he can eventually reunite with his family. Defense counsel also argued that Defendant will not receive the type of treatment he needs while in the custody of the Bureau of Prisons.

The United States proceeded by proffer and stated that Defendant had the opportunity to receive both mental health and substance abuse treatment while on supervised release but chose not to take advantage of those services. The Government also alleged that Defendant enrolled in a substance abuse program at least once in the past but chose not to complete the program. Additionally, the United States argued that Defendant's violence has escalated over time and pointed out that Defendant has a lengthy history of violence, including more than one assault on a pregnant woman, aggravated assaults, and stalking, in addition to property and drug offenses. The Government also noted Defendant's history of absconding from probation and expressed concern about Defendant appearing as required if released. Ultimately, the United States asserted that Defendant should be detained to protect the community, and specifically to protect Ms. Walker, her son, and her unborn child.

## II. LEGAL STANDARD

A person charged with violating supervised release may be released pending further proceedings if the person establishes "by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community." Fed. R. Crim. P. 32.1(a)(6); *see also* 18 U.S.C. § 3143(a)(1). If the court finds by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community he may be released on personal recognizance or an unsecured appearance bond or on conditions. 18 U.S.C. §§ 3143(a)(1); 3124(b)-(c). If the court determines release on conditions is necessary, the court must impose the least restrictive condition, or combination of conditions, that will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(c).

## III. ANALYSIS

The Court first notes this is Defendant's second alleged violation of supervised release in two years and the severity of Defendant's violations has continued to escalate. Defendant previously expressed that he has not taken requirements of his supervised release seriously, and his behavior indicates Defendant is still struggling to understand how critical it is that he comply with all conditions of his supervised release. [*See* Docs. 71, 87, 93]. Additionally, Defendant's aggressive behavior towards Ms. Walker appears to have continued to escalate throughout their relationship. The Court is concerned not only for the safety of Ms. Walker, but also for her young son and soon-to-be-born child with Defendant, particularly given that Defendant has been violent towards Ms. Walker both while she was pregnant and in the presence of her young son as evidenced by Ms. Walker's own testimony. Further, while Ms. Walker testified that she believes Defendant is ready to change and she wants him to get the help he needs, the Court is concerned that Ms. Walker has unrealistic expectations of the effects of treatment as she repeatedly described Defendant as "perfect" except for when he has alcohol, and that alcohol is Defendant's "only problem." The Court also notes that Defendant's Motion asserts that he has an addiction to "pills," but Ms. Walker never mentioned such an issue, leading the Court to question if she fully understands the extent of Defendant's addiction.

While the Court has great faith in the True Purpose program because it has seen first-hand the difference made in the lives of other defendants released by the Court into the program, here, the Court cannot overlook Defendant's escalating pattern of behavior, both since he has been on supervised released and overall. As the United States pointed out, Defendant has a history of assaultive and abusive behavior that extends well beyond his relationship with Ms. Walker. Further, Defendant stopped participating in required mental health services, including violence

mitigation meetings, before the incident that led to his arrest and conviction of domestic assault against Ms. Walker. Defendant has also continued to have contact with Ms. Walker despite the imposition of a no contact order, although the Court does acknowledge this may be due in part to confusion about the difference between a no contact order and an order of protection.

Ultimately, it appears to this Court that Defendant likely does not yet fully appreciate the consequences of his actions and that release to treatment at this time would not be in Defendant's best interest. Additionally, while the Court sympathizes with the desire of Defendant and Ms. Walker for Defendant to be present for the birth of his child, it is unlikely that the no contact order currently in place will be lifted by Ms. Walker's scheduled induction date and even if it is, given the escalation in aggressive behavior towards Ms. Walker throughout their relationship, the Court finds it would be unwise to place Defendant and Ms. Walker together in a high-stress situation such as childbirth without Defendant having completed any significant mental health or substance abuse treatment beforehand. The Court further notes that by Defendant understanding that his conduct has caused him to miss a life event as important as the birth of his child, he is more likely to be motivated to make the permanent changes necessary to permit him to serve as a father to his child over the long term.

While the Court finds the evidence to clearly indicate that Defendant would pose a danger that cannot be adequately addressed by conditions of release if he is permitted to have contact with Ms. Walker, and it was not a close call, the more difficult issue for the Court was whether Defendant should be released to treatment at True Purpose at this juncture with all contact between him and Ms. Walker being prohibited until the later of the date the no contact order was lifted or until Defendant had been in treatment for at least six months. The Court notes that both Ms. Walker's son, who considers Defendant to be his father, and Defendant's unborn child would

benefit from the emotional and financial support Defendant could provide if he was able to adequately address his mental health and addiction issues. From the Court's observations of defendants who have been through the True Purpose program, it is likely Defendant's best hope for addressing these issues. Additionally, while Defendant was in the program, his mother and stepfather could facilitate contact between Defendant and his soon-to-be born child. Despite these benefits and the Court's desire to see Defendant gain the ability to be a good father at the earliest opportunity, the Court concluded that Defendant had not likely been incarcerated for a long enough period since his latest arrest to fully grasp the importance of successfully completing the True Purpose program.

Based on all the above, the Court does not find that Defendant has established by clear and convincing evidence that he would not pose a danger to any other person or the community if released. As such, the Court must recommend that Defendant's Motion be denied at this time.

## IV. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's Motion for Bond or Furlough [Doc. 98] be **DENIED** and Defendant be detained pending the final revocation hearing in this matter.[1]

Respectfully submitted,

s/ Cynthia Richardson Wyrick
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed by **noon on Monday, May 23, 2022**. Fed. R. Crim. P. 59(b)(2). (The Court conferred with counsel regarding the timing of those objections before establishing the shortened deadline). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987). **IF a party has NO OBJECTIONS to this report and recommendation a NOTICE OF NO OBJECTIONS shall be filed within the timeframe proscribed above.**